This case on the calendar, Proctor v. LeClaire. Thank you, and may it please the Court. According to Hewitt, periodic review is necessary to prevent administrative segregation from becoming a pretext for indefinite confinement. For those reviews to accomplish that task, the reviews have to be meaningful, that is not predetermined. The reviews must take into account subsequent information related to the appropriateness of confinement in the special housing unit. The issue before this Court today is whether a reasonable jury could infer from the record that Mr. Proctor did not receive meaningful reviews, that is, those reviews were predetermined, and we contend that they could. Now, isn't it the case, though, that there is in the record evidence to suggest that his submissions were, in fact, reviewed? Because in a variety of times, there would be specific responses to what he had submitted, and doesn't that suggest some form of meaningful review? I think our argument is that meaningful means that it cannot be predetermined. And there are admissions in the record from defendants that no amount of good behavior from Mr. Proctor, nothing that he could do could warrant his release. Specifically, Defendant Delner said at A515 that Mr. Proctor's behavior would not be sufficient to warrant his release from administrative segregation. Similarly, Lucien Leclerc, another defendant in this case, admitted at A714 that in making the determination for ADSEG that no amount of good behavior could overcome his criminal history. So if we agree with you, what does our holding look like? What do you want our holding to look like? The holding should be that there is a, the admissions from defendants, that they, that no amount of good behavior could overcome Mr. Proctor's criminal history. That is, his reviews are predetermined. There is enough record evidence to bring this case to a jury. I think the holding would look like a reasonable jury could infer from these admissions, from the fact that Mr. Proctor has been in administrative segregation for 13 years, and that he's had laudable behavior during that time, that a reasonable jury could infer that his reviews were not meaningful because they were predetermined. There's nothing he could do to get out of that situation. Is that a due process violation or a, yes, a due process violation, a procedural due process violation, or a substantive due process violation? We contend that it is both. To be clear, I think that both parties agree that the substantive due process violation, the court below erred, and that issue is not before this Court. For today, we're contending that it is a procedural due process violation because the reviews are not meaningful. Does it make a difference that there are levels of review here? And the two fellows that you're referencing that had said that they, that it wouldn't make any difference to them, and that actually one of them actually used the word punishment, I think. Does it make a difference that those were at the facility and that their ultimate de novo review was done by the commissioner or the deputy commissioner? I don't think it does here. And the reason is the two quotes that I gave you from Defendant Belnier and LeClaire, the three levels of review are at the top, and are defendants in this case. There are also admissions from people at the facility level that they did not consider his behavior meaningful. I think that you could reasonably infer that at each level defendants were applying a standard where his behavior was not sufficient to let him out. Alternatively, I think this Court can find. Is that, that sounds more like a disagreement with their conclusion at the lower level. You don't win if there's just a disagreement with the conclusion, do you? I'm not sure I understand the question. I'm sorry. If there's a factual review, and they make a determination with regard to the facts, and it's done procedurally correctly, and there's no prejudgment that this all is going to stay in Hedman, then the fact that you might disagree with that factual conclusion doesn't entitle you to relief, does it? I think that's correct. And that's not our contention, is that a reasonable jury could infer from this record that defendants and the reviewers below came to a predetermined conclusion about Mr. Proctor's absent status, and for that reason there's nothing he could do to get out. In essence, no matter what he put before them, you know, that he's been walking on water and, you know, the best behaved person in the facility, that's not going to make it. Your view is that the evidence is allow – the evidence on that point allows a jury to conclude that even that wouldn't make any difference. I think that's correct. It's helpful to point out a case in the Sixth Circuit called Selby v. Caruso, which is on all fours with this case. The inmate was placed in administrative segregation because he was an escape risk and stayed there for 13 years. The court there said a reasonable jury could conclude that there was not adequate justification to keep him in administrative segregation because he – there were no further escapes, he exhibited exemplary behavior, and the sheer length of confinement alone would be enough to bring the case to a jury. Now, that's not this case. Our case is stronger. Mr. Proctor's escape occurred 22 years ago, and he's been in solitary confinement for 22 years. His last assault occurred 17 years ago and are not an adequate justification for his administrative segregation as of today. Are you saying – I'm sorry. Are you saying that there can never be any reference to past behavior? No, not at all. I think that the statute itself, 301.4, requires an assessment of an inmate's criminal history. And I don't want – I believe that prison officials should have discretion to weigh that criminal history. Here, I think a reasonable jury could infer that they did not weigh it against anything else, right? Their – his – any subsequent behavior of Mr. Proctor was completely disregarded and was not sufficient to warrant his release. Their conclusion today would not change if it was 20 years down the line, based on the admissions that we've – we've reached in discovery. No. One question before you step down. Are you conceding that – or do you concede that Annucci and Fisher lack sufficient involvement? I don't think that that – it was not a basis for the district court's decision, and I don't think that that's – it hasn't been briefed here. And so I don't think it's properly before this Court. But to the extent that we are seeking injunctive relief in this case, their personal involvement is not – does not warrant their release as defendants in the case. Does not warrant their – Their dismissal as defendants in the case. Because you need injunctive relief as to them and – Exactly. That's right. Thank you. May it please the Court, I want to get right to one factor that my friend on the other side has been discussing in analyzing the adequacy of these periodic reviews, and that is Mr. Proctor's behavior in administrative segregation. My friend on the other side references the Selby case in which an inmate had an exemplary record. He talks about Mr. Proctor – what he considers Mr. Proctor's exemplary record. That record is far from exemplary. For example, in 2010, in April of 2010, while Mr. Proctor was in ADSEG, he was found responsible for engaging in violent conduct. And then in January of 2012, he was found responsible for possessing a weapon. And those are just two of the eight misbehavior tickets in the record for Mr. Proctor for the ADSEG period. So I recognize my opponent's arguments about the relevance of exemplary behavior and the like. Those arguments are hypothetical here because Mr. Proctor's record is not exemplary. But in any event – So are you making that argument because the various officials essentially said from the get-go that there is nothing that this man could do to show that he could change his physical status within the prison system? I don't think that's quite an accurate reading of the record. I don't think that's a fair reading of the record with respect. What the prison officials said, and again, as one of your colleagues pointed out, many of those were low-level individuals at the facility committee. I'm not sure it would be fair in this context in a personal damages suit to impute those to Belner and LeClerc. But in any event, what Mr. Belner and what Mr. LeClerc did, they expressed justifiable skepticism, not that nothing he could do would warrant release ever, but that no amount of simply behaving himself, which, again, he has not done in administrative segregation, would warrant relief. But beyond that, the point – those are justifiably skeptical predictions when they were asked those questions in deposition. But what they were not were declarations that no matter what behavior was put before them at these 60-day intervals, that behavior would not be considered. But since 2010, what's the record been? Since 2010, the record has been at least a couple tickets in administrative segregation, one for violent conduct in April of that year, one for possessing a weapon in January. I'm saying since 2010. Let's say the last six years, last five years. Yes. The last one is 2012, if I'm right. The last one is 2012. That's right. And the record stops somewhat short of the present. But for the past few years, his conduct has been blemish-free in administrative segregation. So the last few years it's been blemish-free. Isn't that the point of reference? It's absolutely a point of reference, and it's a point of reference that the prison officials at each turn considered at the front end. They may not have given it much weight on the back end. They obviously didn't view it as outcome determinative on the back end. But what the procedural due process clause requires, unlike substantive due process, unlike perhaps the Eighth Amendment, which has not been introduced by the opponents in this case, the procedural due process clause only requires consideration. And the reviews, as Your Honors discussed, point-by-point rebuttal to Mr. Proctor's questions and the like, the reviews indisputably reflect consideration on the front end. And how so? Or let me put it a different way. Could not a jury on this record, and obviously you would dispute it mightily, could not a jury on this record say, well, actually, we agree, we credit the testimony of the folks who say there's nothing he can do to get out, and therefore the process that he has been given is meaningless? My response to that would be go ahead and credit that testimony. On summary judgment, we have to. Although, again, I will say summary judgment, this Court has to view the evidence in context, not just those isolated deposition statements, but the full record, just like a jury would. But my objection would be to your therefore clause. The statements that these individuals made, including in some instances, as my friend on the other side points out, Gellner and LeClaire, was not that whatever behavior gets presented to them, they wouldn't consider. They were justifiably skeptical predictions that no amount of simply behaving himself would be enough. So what's he to do? Right. What's he to do? He behaves himself and he's rewarded with another 60 days in the shoe. He behaves himself, he gets another 60 days in the shoe. He behaves himself for five years and he's still in the shoe. He's been in the shoe for 22 years, 22 years. If this were happening in China, we'd be moaning a human rights violation. What is he supposed to do? Well, I think I agree with you, Your Honor, although I think we would be. Is he being punished because he behaves? Is the conclusion that, well, he behaves when he's in the shoe, so therefore he won't behave when he's in the general population? No, absolutely. He hasn't been in the general population for 22 years. That's right. And at each 60-day interval, his circumstances are reassessed. What kind of meaningful review is that, as if you say to him, okay, you behave yourself, you stay in the shoe? I mean, what kind of analysis is there of him with regard to his conduct? I mean, there are times when they say, well, we think he's just behaving until he can get out. That's right. I mean, but I suppose that's some kind of credibility determination that they get some slack on. That's right. But I just try to figure out what the record could be that would get him out. Well, then, Your Honor, let me tell you what the record is. Would he have to be like Paul or Saul on the road to Damascus and have some kind of conversion to get him out? I mean, does he have to be touched by the finger of God to get him out? What does he have to do? No, Your Honor. He has to follow the blueprint given to him in the reviews. And I will tell you what that – Okay, so what – let's go – let's – give me a page. I will tell you what that blueprint entails. And I think JA-400 is a useful example. There are many examples like this. There are a few things he can do above and beyond simple good behavior that might sway the reviewers. Number one is accept responsibility for some of the past instances of misconduct in administrative segregation, in SHU for disciplinary and for his penal crimes. Was he asked to do so? Oh, he's been asked to do so repeatedly. Was he asked to do so? And is there some kind of interview that occurs for him when he makes this application? He has the right to submit a written document, but he doesn't have the right to be interviewed, does he? He doesn't have the right to be interviewed, but he does have the right to submit an objection letter, which, as Your Honor said, he has submitted at various turns and has been considered point-by-point fashion. So that's number one, is he can admit responsibility for certain of his actions, which he has not already. That's concrete pathway to release number one. Concrete pathway to release number two is that he can take fuller advantage and be more receptive of the pilot incentive program that, on occasion, has been offered him. The pilot incentive program is very important for SHU. Because what the pilot incentive program does is it gives the SHU inmate, the Ad Seg inmate, the chance to benefit from gradually dribs and drabs of more freedom. He gets to live, he gets to exist in a slightly freer, less confined environment. More commissary purchases, time to eat food outside of his cell, rec time outside of his cell, telephone calls, and the question is if he uses that, if he uses and appreciates those incentives and demonstrates that. This is all speculative, though, right? I mean, we've got the deputy commissioner, LeClaire, saying that his past behavior, Proctor's past behavior, is enough to justify continued segregation, right? He says that. He does say that. Okay. So we're now at the stage of, this is summary judgment stage. You may ultimately prevail, but at this stage, how can you prevail? In other words, you're raising, you're saying all sorts of speculative things, which may turn out to be, you may be able to flesh them out, but there is a dispute. And at this stage in the proceeding where we are procedurally, how can we grant summary judgment? We can grant summary judgment because of the overarching posture of this case. This is a procedural due process case. The issue is not how much weight Mr. LeClaire or Mr. Belner going forward will or will not assign to any good behavior, acceptance of responsibility, or the like that they may see. The issue is whether they consider it on the front end. And what the deposition testimony does not establish is that when put in front of them, no matter how pessimistic they may be, no matter how, and I would say justifiably, skeptical they may be, the deposition testimony does not establish that they will not consider that evidence when, if and when, it is put in front of them. And that consideration, not weight, not ultimate outcome, that front-end consideration is the meat and potatoes of the procedural due process clause that the record has established that there has been such consideration here. And that's why the ---- Couldn't a jury infer from that, Mr. Ginsburg, couldn't a jury infer from the evidence at least presented, excuse me, in the light most favorable to the plaintiff here, that yes, we will consider it, but you're always going to lose? That. But you're always going to lose follows that. That's not a fair ---- That's not a fair inference, Your Honor, if I may go a few seconds over and explain it. Is that up to a jury? I'm sorry, Your Honor? Isn't this a quintessential jury question? It's not the quintessential jury question because, again, just like a jury would be viewing the evidence at trial, this Court has to view it in context. And we're talking about isolated deposition statements, which, again, do not reflect any intent not to consider evidence presented. In fact, the depositional evidence, just like the reviews themselves, reflect that at each 60-day interval, whatever evidence is presented by Mr. Proctor is dutifully considered by the reviewer. And in the context of ---- And as a matter of law, then, we just ---- we are to ignore various witnesses' statements or at least one witness' statement, but there's no ---- nothing you can do to get at. No, you're not to ignore it. You are to take it for what the only fair inference ---- what the only fair inference involves, which is that these are justifiably skeptical predictions made on the day that they were deposed, but they are not an avowed intent not to consider any evidence that will be presented. The question to LeClerc was, I think, something along the lines of ---- I don't have the reference right now, but something along the lines of what is it that he could do to get out? And LeClerc said nothing. I mean, he didn't say what you said. And you're right. You're ---- fair enough. Your reference to page 400 is fair in the sense that it talks about the fact that he ---- his explanation for some of his confrontational issues that go back in it that occurred in 2010 were the way that he was being taunted as opposed to accepting responsibility. Fair enough. I think you fairly characterized that. But what about subsequent to 2010? During these long periods of time where he has no tickets or other types of things, the reports regularly recite the fact that he didn't escape 20 years ago. That's true. And that's still a very relevant data point. And it's relevant for ---- first of all, the relevance of that data point is firmly committed to prison officials. Again, the question that the due process clause asks is not how much weight that piece of data is given on the back end. It's whether it's considered on the front end. I agree with you. I asked you a point about that because as long as it doesn't in some way seem arbitrary or set that they've made up their mind ahead of time, the fact that we might disagree with the conclusion, we have to give some deference to prison officials. But where someone offers up the fact that there's nothing else he could have said in the deposition, doesn't that then at least nudge towards an issue of fact about what the motivating factors were for those that were making the decisions? No, it doesn't. Because in that same deposition, Mr. LeClair, just like all of the other defendants ---- excuse me, just like all of the other reviewers to a person, in addition to these skeptical predictions, these pessimistic predictions that they made, they also said virtually in heck verba that each time the evidence is presented to them, nevertheless, they will consider it. They will allow themselves to be surprised. You've got poor Sally, right, who says that the ---- and I quote, the only thing that Mr. Proctor could do that would convince him that Proctor should be released to the general population is to get old. You've got DeLutis, who said there is no amount of positive behavior that Mr. Proctor could ever exhibit to change his opinion, that Proctor belonged in ADSEG because, quote, he is right where he belongs. And Judge Wesley also has already referred to LeClair's statement. So these are not simply isolated statements that can be taken out of context. In the context of summary judgment, there are questions that are really for the jury to look at. I don't think so, Your Honor.  If anything, they should be viewed in their proper context. And their proper context is as not calling into question whether, despite their pessimistic attitudes about what Mr. Proctor might do in terms of general good behavior that he exhibits, again, we haven't seen that as recently as 2012. We've got a ticket for weapons possession. But they do not call into question the deposition testimony stating that whatever evidence is presented to them, these reviewers will dutifully consider at each turn. So the answer to my question is, as a matter of law, then we are to ignore what my two colleagues have recited to you because they just aren't material to the consideration. Well, the word ignore sounds like a loaded question against me. So I don't like that characterization of it. But we are to view it in its proper context. Close your eyes for a minute. Then I'll let you – well, excuse me. Then we'll let you sit down. But close your eyes for a minute and imagine what cross-examination and then closing argument is going to look like in a trial in this case and tell me that no jury could be persuaded that this guy doesn't have a snowball's chance in hell of getting out because the process is closed to him. No jury could be persuaded of that because of your last clause, Your Honor. What, snowball's chance in hell? No. Because the process is closed to him. The process is not closed to him. Justifiably and certainly within their discretion, some of these reviewers are deciding not to credit certain evidence, to give less weight to certain evidence. But what they are not doing, what they are not doing at all is closing the process. The process is avowedly open. They are giving this consideration on the front end. The weight that they give to particular factors and obviously the outcome. My friend on the other side is dissatisfied with and I would be too. But all the procedural due process clause requires as opposed to substantive due process, which is in this case, although not presented here today. The Eighth Amendment also provides a substantive limiting principle, although that hasn't been invoked by the plaintiff. All the procedural due process clause requires is that front end consideration, which not only the deposition testimony but the reviews themselves conclusively establish, unless there are any other further questions, Your Honors. Just to be clear, on the second substantive due process, you agree that the district court erred? We do, but we do not agree that there are, well, I don't think the other side would say. Not in terms of the merits. Yes, that's right. We don't think there's an issue of fact, but as a procedural matter, it has to go back. That's right, Your Honor. Thank you. Thank you, Your Honors. Thank you. I just want to make a couple of points. One, Judge Wesley, you mentioned the point about whether we can attribute statements by lower reviewers to the defendants. There are statements in the deposition testimony from Belner and LeClaire. This is A490. Belner said, he was asked at his deposition, have you ever disagreed with the central office three-member committee, and was asked a similar question regarding the facilities committee, and he said no. Similar testimony from LeClaire. You can do good work. Go ahead. I'm sorry. I don't want to use your time up. Go ahead. And I think that if you had any trouble attributing the statements by Belner and LeClaire to the defendants themselves, their adoption of statements made by the central office review committee and by the facility committee would be sufficient by their signing off on each review. Regarding behavior, I think it's important to stress that administrative segregation status should be reviewed every 60 days, not every five years or longer. And here the fact that Mr. Proctor has not committed an infraction since 2012 and has not committed a serious infraction since then goes to the fact that his behavior has been laudable and has been disregarded. One more point about behavior. In the case Selby v. Caruso, that inmate had good behavior over a 13-period span, although he had four infractions, serious infractions during that time that I would contend are more serious than the serious infraction in Mr. Proctor's history while he was in administrative segregation. So if the court is worried about those serious infractions in Mr. Proctor's behavior, they are other courts have held that similar facts have not precluded summary judgment. Let me ask one last question. You submitted some, an affidavit from a psychologist that examined him? Yes. The psychologist's examination indicates that Proctor himself, of serious voices, has problems with, he himself acknowledges that he's quite paranoid, he has a hard time with personal relationships, which is somewhat similar to the difficulties that he experienced in the general population when he was in the general population. Does that give you pause in the sense that this kind of information, because your psychologist was also looking at the medical records of your client at the time he was doing the interview and the review for the purpose of your affidavit, does that provide a basis for the State's justification for continuing to hold him that it's not so much that he may now be an escape risk, but there are a number of times where he was denied release where they said there's concern that you go back into general population, you yourself will be hurt because of your difficulty in dealing with people. Does that undercut your position to some degree? I don't think so for the simple reason that the inquiry here is not whether Mr. Proctor remains a safety and security risk. That is the inquiry the prison officials must make. The inquiry here is whether he received a meaningful due process. The defendants have not offered any evidence that they relied on psychological evidence. That's true. You're right about that. They don't mention it at all. I don't see it in any of the hearing notes that they regularly reflect that he somehow got emotional difficulties, and maybe there's a purpose for that. But if they had mentioned it as a part of the evidence, you would be hard-pressed to dispute it. And said that they had considered that and that was a factor that they considered, then you'd be hard-pressed to be making the argument you're making, right? I can – I think we contend that based on the record as it stands that Mr. Proctor No, I understand that. This is a hypothetical. You can say yes or no, and I understand the facts are different here, but. I think that prison officials could rely on evidence that Mr. Proctor poses psychological danger to other inmates if they relied on evidence from a psychologist. And I would point you to Williams v. Hobbs' summary judgment, or Williams v. Norris' summary judgment, where the court called out defendants specifically for saying that they did not rely on psychological evidence, even though defendants contended that there might be evidence of psychological harm. Thank you. We appreciate the good arguments on both sides. Mr. Shatmire, is this a pro bono representation? Yes. We appreciate your – the pro bono contributions of your firm. Very helpful to the court. Thank you for your excellent argument. Thank you for your willingness to come to Ethic. Thank you. Of course, we told you you had to come, so you don't have a choice. The court will reserve decision.